## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD A. BEES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| BANK OF AMERICA, N.A.; | ) | File No. 1:14-cv-8177 |
| BAYVIEW LOAN SERVICING, LLC; | ) | |
| and BANK OF NEW YORK MELLON | ) | JURY TRIAL DEMANDED |
| FKA THE BANK OF NEW YORK, AS | ) | |
| TRUSTEE (CWALT 2005-57CB), | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, RICHARD A. BEES, by the undersigned attorneys, complains of BANK OF

AMERICA, N.A., BAYVIEW LOAN SERVICING, LLC, and BANK OF NEW YORK

MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2005-57CB), as

follows:

### NATURE OF THE ACTION

1. Plaintiff RICHARD BEES ("Bees") brings this action for damages from breach of

contract, and for violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois

Consumer Fraud Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), and the

Truth in Lending Act ("TILA").

2. All of the claims stated herein stem from the wrongful servicing and debt collection

activities related to Bees' home mortgage loan.

1

**JURISDICTION AND VENUE**

3.   Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Bees resides in this District and the events occurred in this District.

4.   Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000.00 and is between citizens of different states.

**PARTIES**

5.   Plaintiff Bees is a natural person who resides at 5 Golf View Ct., Bolingbrook, IL 60440 ("subject property"). The subject property is Bees' primary residence.

6.   Defendant BANK OF AMERICA, N.A. ("BANA") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. BANA is a foreign company and a creditor, lender, and servicer of mortgage loans across the country, including Illinois. BANA does business as Bank of America Home Loans.

7.   BANA was the servicer of the mortgage loan through either July 2013 or August 2013.

8.   Defendant BAYVIEW LOAN SERVICING, LLC ("Bayview") is a Florida corporation with its principal place of business in Florida. Bayview is a foreign company in the business of servicing loans and debt collection across the country, including Illinois.

9.   Bayview was the servicer of the mortgage loan beginning in either July 2013 or August 2013.

10. Defendant BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2005-57CB) ("BNYM") is foreign corporation and a creditor, owner, and investor of mortgage loans.

2

**INTRODUCTION**

11. Bees made monthly payments on his home mortgage loan from its origination in 2005 into 2012. In 2012, Bees defaulted on his monthly payment obligations.

12. In approximately December 2012, Bees and BANA agreed to modify the subject loan. The loan was modified and brought current in February 2013.

13. Immediately after the loan modification, BANA continued to treat the loan as if it was in default.

14. BANA failed to properly account for Bees' payments or update its records to reflect the terms of the loan modification. Each month thereafter, BANA mishandled Bees' payments, and failed to apply his payments in compliance with the provisions of both RESPA and the modified mortgage contract.

15. In July or August 2013, servicing of the subject loan was transferred from BANA to Bayview.[1] Neither BANA nor Bayview ever notified Bees orally or in writing of any transfer of servicing.

16. As a result, Bees continued to send his monthly payments to BANA through September 2013. BANA cashed all of Bees' payments and never notified him of any servicer change.

17. In October 2013, Bayview sent Bees a default notice that falsely claimed that no payments had been received on the subject loan since June 2013.

18. In October 2013, Bees disputed Bayview's handling of the loan and the amount it claimed was owed "in default." In response, Bayview advised Bees orally to stop making payments until it had resolved its servicing errors.

---

[1] As fully explained below, Bayview's and BANA's own correspondence contain conflicting information. Some correspondence state that servicing was transferred on July 16, 2013. Other correspondence state that servicing transferred on August 1, 2013.

19. Bayview never resolved the problem or communicated with Bees regarding the dispute. The next communications that Bees received from Bayview were standard notices of default and threats of foreclosure – as if no dispute or error existed.

20. Over the last year, Bees sent several Qualified Written Requests ("QWRs") and FDCPA dispute letters to both BANA and Bayview in an attempt to resolve the servicing errors.

21. BANA and Bayview have failed to provide any good faith responses and have simply ignored many of Bees' disputes. Bayview proceeded with debt collection efforts that have continued through the date of this complaint and threatened Bees with countless dunning letters and foreclosure of his family home.

### FACTS SUPPORTING THE CAUSES OF ACTION

22. On September 29, 2005, Bees executed a 30 year mortgage loan secured by Bees' home in the amount of $228,200.00 in favor of Quicken Loans, Inc. *See* Exhibit A attached hereto is a true copy of the note and mortgage.

23. The subject mortgage required that the lender maintain an escrow account to pay Bees' taxes and insurance in accordance with RESPA. *Id.* at Mortgage ¶¶ 3-4.

24. After origination, servicing of the subject loan was transferred to BANA.

25. No notice was ever provided to Bees that notified him of a change in ownership.

26. Bees defaulted on the original mortgage loan in 2012.

27. On December 28, 2012, BANA agreed to modify the subject loan. *See* Exhibit B attached hereto is a true and correct copy of the loan modification.

28. Bees' modified monthly payment amount for principal, interest, and escrow was $1,279.54. The first payment on the modified loan was due on February 1, 2013. *Id.*

29. Once the loan modification contract was signed and the February 2013 payment was made, the loan was contractually current. *Id*.

30. Unbeknownst to Bees, BANA incorrectly entered the loan modification into its system as requiring an initial monthly payment on January 1, 2013, and not February 1, 2013 per the loan modification contract. *Id*.

31. When Bees made his first modified payment for February 2013, BANA applied his entire $1,279.54 payment to past (pre-modification) principal, and none to interest or escrow. Nothing was applied or credited for the month of February 2013.

32. Bees made his second modified payment of $1,279.54 for March 2013. However, BANA applied that payment for the month of February 2013 – as if the February payment had not been made – and immediately assessed a late fee against Bees.

33. Bees was confused by BANA's conduct and attempted to contact BANA for clarification. Bees received no information apart from BANA falsely advising Bess that he was "in default."

34. Unsure of how to pay moving forward, Bees asked BANA what he should do for his April 2013 payment. BANA did not provide a substantive response and Bees withheld his April 2013 payment until BANA fixed the account. BANA advised Bees that it would "look into the matter" and call Bees. Bees did not hear from BANA.

35. Bees continued to call BANA through the months of March and April 2013 to resolve the servicing errors, but BANA would not provide any answers or resolutions. Not wanting to default on his payments, Bees resumed his monthly payment of $1,279.54 in May 2013.

36. Bees paid $1,279.54 in June 2013.

37. BANA applied Bees' May 2013 and June 2013 payments to the subject loan account improperly (i.e. to March 2013 – a month that had already been fully paid).

5

38. BANA accepted and cashed Bees' monthly payments of $1,279.54 through September 2013 but did not apply those payments to principal and interest on the loan account.

39. In October 2013, Bees received a default statement notice from Bayview. This was Bayview's first and initial communication to Bees.[2] Immediately upon obtaining servicing rights, Bayview treated the loan as if it was in default.

40. Upon reciept, Bees called Bayview to dispute the handling of his loan account. He informed "Lakeisha Johnson" about the payments made to BANA through September 2013.

41. Ms. Johnson advised Bees that Bayview had "no more affiliation" with BANA and that Bees should "go after BANA for the money himself" (i.e. the monthly payments cashed by BANA through September 2013).

42. Upon information and belief, Bees' payments were placed into a suspense account. Bees requested that Bayview refund the balance in his suspense account, but his request was refused.

43. After Bees protested and informed Ms. Johnson that he was never notified about any servicer change and that all of his payments were accepted and cashed by BANA, Ms. Johnson ultimately advised Bees not worry about the unaccounted for payments that were received and accepted by BANA. Ms. Johnson further advised Bees not to make his October 2013 payment, because Bayview would "rewrite the loan and everything would be taken care of."

44. Shortly thereafter, Bees sent Bayview some documentation that Ms. Johnson requested. Bees was promised a response within 30 days and told not to take any action.

45. Bees did not hear anything substantive from Bayview for five (5) months. Instead, Bayview  continued to send Bees dunning letters, default notices, and statements that did not address the servicing errors.

---

[2] Bayview did not send a 30-day validation notice to Bees within 5 days of its initial communication.

46. On February 17, 2014, Bayview sent Bees a notice that he was 231 days delinquent, or since July 1, 2013.

47. On March 18, 2014, Bees sent Bayview a Qualified Written Request ("QWR") (the "first QWR"). Bees' first QWR to Bayview requested:

    a) a payment history;

    b) the identity of the owner of the loan; and

    c) a copy of the note.

48. Bayview never acknowledged or responded to Bees' first QWR at all.

49. On April 13, 2014, Bees sent Bayview a second QWR (the "second QWR"). Bees' second QWR requested information regarding:

    a) the sale of the subject loan from BANA to Bayview;

    b) the payments that he sent to BANA within 60 days after the alleged transfer date, that BANA cashed but had not applied to Bees' account; and

    c) verification of the amount that was allegedly owed.

50. On April 28, 2014, Bayview responded to Bees' second QWR and falsely stated:

    a) that BOA sent Bees a notice of transfer of servicing on June 24, 2013 advising of a *July 16, 2013 transfer date*;

    b) that Bayview sent Bees a notice of transfer of servicing on July 26, 2013 advising of a *July 16, 2013* transfer date; and

    c) that any payments received from Bees were [improperly] applied to penalties, interest, taxes, and insurance – not to principal.

51. Bayview included both of the purported notices of transfer of servicing from BANA and Bayview with its response. Bees had not received either notice prior to April 2014.

52. Quite notably, the notices of transfer did not even have the appearance of legitimacy. First, the notice that was allegedly sent by BANA included two different "effective dates of transfer" for the same loan. In one section, the transfer occurred on "July 16, 2013" and in another section the transfer occurred "August 1, 2013."

53. The letter was clearly computer-generated for the sole purpose of responding to the QWR in 2014, in an attempt to demonstrate that it was sent to Bees approximately one year earlier. However, when creating this "retroactive" document, BANA (and/or Bayview) negligently imputed two different "effective dates" in the respective sections.

54. Upon information and belief, Bayview merely attempted to mirror the BANA "effective date" of July 16, 2013 in its own letter, and failed to identify the other "effective date" of August 1, 2013.

55. Shortly thereafter, on May 1, 2014, Bayview sent Bees a notice that claimed he was 289 day delinquent, or since July 16, 2013.

56. On June 20, 2014, Bees, through his attorneys, sent a third QWR to both Bayview and BANA (the "third QWR").

57. The third QWR disputed the (a) servicing of the subject loan, (b) the principal amount due on the loan, and (c) the fees added and assessed the subject loan. The third QWR requested an accounting, loan history, itemized statement of the loan, amount to reinstate the loan, as well as all notices of default, dunning letters, and 15 U.S.C. § 1692g notices sent to Bees.

58. The third QWR included a TILA § 1641(f)(2) request for the identity of the owner and master servicer of the subject loan.

59. Additionally, the third QWR advised BANA and Bayview that Bees was represented by counsel and to direct all further communications to his attorneys at Sulaiman Law Group, Ltd.

60. BANA did not acknowledge the third QWR within 5 business days of receipt.

61. On August 14, 2014, BANA responded to Bees' third QWR by stating that "servicing of the subject loan had been transferred on August 1, 2013." This conflicted with Bayview's alleged transfer date of July 16, 2013.

62. BANA provided no other information.

63. Bayview acknowledged receipt of the third QWR within 5 business days of receipt, but never sent a formal response to the third QWR or responded to Bees' TILA § 1641 request.

64. Bees has yet to receive, from any party, a complete payment history for the subject loan, a full accounting, or explanation of the payments that he made to BANA through September 2013 that were not applied to the modified loan.

65. Instead, Bayview referred Bees' loan to foreclosure counsel in September 2014.

66. On September 7, 2014, Bees received a 30-day validation notice pursuant to the FDCPA from Bayview's foreclosure attorneys.

67. The FDCPA notice stated that the creditor of the subject loan is Defendant BYNM. Bees had no notice that BYNM even existed until the FDCPA notice was received.

68. Despite having knowledge that Bees was represented by an attorney, Bayview continued to send Bees statements, dunning letters, and call Bees directly to attempt to collect the subject debt through the date of this complaint. Bees has received over 10 collection calls from Bayview employee "Everett Beebee" over the last three months, including several calls in October 2014.

**CAUSES OF ACTION**

69. All of BANA's, Bayview's, and BNYM's actions are the proximate cause of damages to Bees that include illegal fees, charges, interest, damage to his credit report, loss of equity in his home, emotional distress, physical illness and injury, medical bills, including for bruxism, pain and suffering, and the loss of funds that BANA and Bayview misapplied to Bees' account.

70. Bees restates each and every allegation stated herein, including the allegation of damages in paragraph 69, as if fully alleged in each count of this complaint.

## COUNT I – BREACH OF CONTRACT
### (AGAINST ALL DEFENDANTS)

71. Bees had a valid and enforceable mortgage contract with BANA as the servicer of the subject loan through approximately August, 2013. Bees has a valid and enforceable mortgage contract with Bayview through the date of this complaint. Bayview is liable to Bees for the actions of BANA as the assignee of the contract from BANA. Bees has a valid and enforceable mortgage contract with BYNM as the creditor of the mortgage loan. BYNM is liable to Bees for the actions of its servicers.

72. Bees fully performed his duties under the contract by tendering his monthly payments and by complying with all other terms of the subject loan modification beginning in February 2013.

73. Bees complied with all terms of the mortgage contract from the point of origination of the loan modification, signed on December 28, 2012 and the first payment due February 1, 2013.

74. BANA imputed the incorrect effective date of the loan modification into its system, thereby misapplying all of Bees payments, and substantially deviating from the express contractual agreement.

75. This led to BANA claiming and placing Bees into a perpetual state of "default."

76. Leading up to and upon the transfer of servicing, BANA and Bayview treated the mortgage loan as if it was in default and tried to collect an inflated principal balance, late fees, and unearned fees and costs from Bees.

77. Upon the transfer of servicing, BANA and Bayview deducted amounts for unearned fees and costs before applying Bees' payments to principal, interest, and escrow.

78. BANA and Bayview misapplied Bees' payments, placed Bees' payments into a suspense account, and failed to properly allocate his payments to principal, interest, and escrow.

10

79. Bees requested that BANA and Bayview properly apply his payments, but his request was refused.

80. Thereafter, both BANA and Bayview tricked Bees by telling him to stop making payments until the servicing errors were "fixed," only to refuse to communicate with Bees other than to threaten Bees with default notices and foreclosure. This conduct further violated the duty of good faith and fair dealing.

81. BANA and Bayview failed to acknowledge and apply Bees' payments in accordance with the mortgage contract and loan modification.

82. Without sending notice, BANA and Bayview assessed penalties, increased Bees' monthly payment amount, increased his principal balance, and recorded his loan as past due.

83. BANA and Bayview are in further material breach of contract for their:

    a. failure to credit and apply Bees' payments as required by the contract;

    b. assessment of unauthorized late fees, legal fees, and costs;

    c. conversion of escrow funds to unauthorized fees and costs;

    d. failure to apply payments to interest and principal before escrow and fees;

    e. failure to provide accurate repayment and "reinstatement" figures;

    f. failure to accurately respond to Bees' correspondence and other disputes; and

    g. failure to conduct their affairs in good faith.

84. BANA and Bayview are in further material breach of the contract for violating RESPA § 2609 by:

    i. failing to properly fund Bees' escrow after the loan modification effective date;

    ii. failing to send an annual escrow statement upon the effective date of the loan modification;

    iii. assessing fees against Bees without conducting a complete and accurate annual account analysis or providing prior notice;

    iv. demanding payments that significantly exceeded the actual amount owed;

    v. overcharging Bees for late fees and costs; and

    vi. deducting amounts for unrelated and improper fees and costs.

11

85. Any payment default by Bees subsequent to the aforementioned conduct (a) occurred after BANA (and Bayview as assignee) breached the subject mortgage contract ad while Bees had fully performed under the contractual terms, and (b) was induced by BANA and Bayview through their failure to properly account for Bees' payments, failure to fix the servicing errors, and their misrepresentations and directives that Bees stop making payments until the servicing errors were "fixed,"

WHEREFORE, Plaintiff RICHARD BEES respectfully requests that this Honorable Court:

    a.  find that Defendants materially breached the mortgage contract;

    b.  award Bees his actual damages to be proven at trial;

    c.  award Bees his reasonable attorney fees and costs; and

    d.  award Bees any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (AGAINST BANA AND BAYVIEW)

86. The subject loan is a "federally related mortgage" under RESPA. *See* Exhibit A.

87. BANA and Bayview (collectively the "Servicers") each qualify as a "servicer" under RESPA § 2605(i)(2).

**a. Failure to Disclose Transfer of Servicing**

88. BANA violated RESPA § 2605(b)(1) by failing to send Bees the required notices of transfer of servicing.

89. BANA violated RESPA § 2605(b)(2) by failing to send Bees the required notice of transfer of servicing not less than 15 days before the effective date of transfer.

90. BANA violated RESPA § 2605(b)(3) by sending Bees a notice of transfer of servicing containing two different effective dates of transfer (July 16, 2013 and August 1, 2013).

91. Bayview violated RESPA § 2605(c)(1) by failing to send Bees the required notice of transfer of servicing.

92. BANA violated RESPA § 2605(c)(2) by failing to send Bees the required notice of transfer of servicing not less than 15 days after the effective date of transfer.

93. BANA violated RESPA § 2605(b)(3) by sending Bees a notice of transfer of servicing containing an incorrect date of transfer (July 16, 2013).

**b.  Failure to Account For Payments During 60-day Transfer Period**

94. Bayview violated RESPA § 2605 when it failed to honor Bees' payments within 60 days of obtaining servicing rights on July 16, 2013 or August 1, 2013.

95. Bayview violated RESPA § 2605(d) when it failed to properly credit payments made during the 60 day transfer period.

96. Bayview violated RESPA § 2605(d) when it imposed late fees for payments that Bees made to BANA during the 60 day transfer period.

**c.  Failure to Acknowledge Receipt of QWR within 5 days**

97. The Servicers violated RESPA § 2605(e)(1)(A) by failing to timely acknowledge receipt of Bees' QWRs addressing the application of payments, the assessment of illegal fees, increased principal balance, and the mishandling of the account.

98. Bayview violated RESPA § 2605(e)(1)(A) by failing to timely acknowledge receipt of Bees' first QWR.

99. BANA violated RESPA § 2605(e)(3)(A) by failing to acknowledge receipt of Bees' third QWR within 5 days.

**d. Failure to Take Required Action Within 30 days of Receipt of QWR**

100. The Servicers failed to timely respond to or conduct a reasonable investigation in response to Bees' QWRs and requests for information in violation of RESPA § 2605(e)(2).

101. Bayview violated RESPA § 2605(e)(2) by failing to respond at all to Bees' first and third QWRs.

102. Bayview violated RESPA § 2605(e)(2) by failing to respond to Bees' second QWR by making appropriate corrections to Bees' account, or conducting an investigation and providing statement of reasons why the servicing was correct or the information is unavailable.

103. BANA violated RESPA § 2605(e)(2) by failing to respond to Bees' second QWR by making appropriate corrections to Bees' account, or conducting an investigation and providing statement of reasons why the servicing was correct or the information is unavailable.

104. The Servicers violated RESPA by failing to correct Bees' account within 30 days of receiving a letter disputing the servicing in violation of RESPA § 2605(e)(2)(A).

**e. Reporting to Credit Bureaus**

105. The Servicers violated RESPA by reporting negatively to credit bureaus during the 60-day period beginning on the date of the Servicers' receipt of Bees' QWRS.

106. Bees suffered additional damages from violations of RESPA §§ 2605 and 2609 in the amount of the wrongful charges assessed against his loan, which he was forced to pay. Bees has not been reimbursed for these charges by the Servicers.

WHEREFORE, Plaintiff RICHARD BEES requests that this Honorable Court:

     a. grant judgment in his favor and against BANA and Bayview;

     b. declare BANA and Bayview's perpetual conduct to be a violation of RESPA;

     c. award Bees actual and additional damages pursuant to RESPA § 2605;

     d. award Bees reasonable attorney fees and costs pursuant to RESPA § 2605(f); and

     e. award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST BAYVIEW)

107.  Bees is a "consumer" as defined by FDCPA § 1692a(3).

108.  The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

109.  Bayview qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

110.  Bayview qualifies as a "debt collector" because it treated the subject loan as if it was in default when it acquired rights to the subject loan.

#### a.   Violation of § 1692c

111.  Bayview was placed on notice that Bees was represented by counsel since at least June 20, 2014. However, Bayview continued to communicate with Bees directly after June 20, 2014 by sending collection letters and default statements directly to Bees and by making collection calls to Bees' cellphone in violation of 15 U.S.A. § 1692(c)(a)(2).

#### b.   Violation of  § 1692d

112.  Bayview engaged in abusive and oppressive conduct in violation of  FDCPA § 1692d through (i) unethical mismanagement of the subject loan account; (ii) refusal to correct its accounting errors or adequately respond to Bees' repeated disputes; (iii) refusal to acknowledge the express terms of the subject mortgage and loan modification contract; (iv) refusal to correct the principal balance; (v) misapplication of Bees' payments without providing sufficient notice or reason; (vi) assessment of illegal fees; (vii) forcing Bees to pay the wrongful fees; (viii) repeatedly calling Bees to collect the subject loan debt; and (ix) threatening foreclosure to collect substantially more than the amount owed.

### c. Violation of § 1692e

113.  Bayview's actions were unfair, unconscionable, false and deceptive under FDCPA §§ 1692e & f as a result of its (i) misrepresentations of the status of the debt;  (ii) attempts to collect illegal fees and costs not authorized by law or contract; (iii) misrepresentation of the amounts owed to cure the "default;" (iv) declaring the loan in delinquent or default status when Bees had complied with terms of the contract; (v) assessment of illegal fees and corporate advances against Bees; and (vi) threatening foreclosure prior to verifying the subject debt.

### d. Violation of § 1692f

114.  Bayview misrepresented the debt by lumping its fees, unauthorized corporate advances, and costs in with the principal debt obligation, and seeking payment of amounts that were not authorized by the mortgage contract or the loan modification or permitted by law in violation of FDCPA § 1692f.

WHEREFORE, Plaintiff RICHARD BEES requests that this Honorable Court:

    a.    enter judgment in his favor and against Bayview;

    b.    declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    c.    award Bees statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    d.    order the deletion of all adverse credit reporting related to the loan;

    e.    award Bees costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and

    f.    award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
## (BANA AND BAYVIEW)

115.  Bees meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

116.  The Servicers violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

**a. Unfairness**

117.  Bees' inquiries and disputes regarding the servicing of his loan were never investigated or adequately answered; the lack of clarity from the Servicers resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of the mortgage loan. This never-ending battle lasted over a year.

118.  The Servicers' conduct in relation to Bees' loan was willful, malicious, unfair, arbitrary, and designed to place Bees' account in a perpetual state of "default."

119.  The Servicers' conduct offends public policy as it demonstrates an industry-wide practice of charging unearned fees and costs to a borrower in order to make a profit, forcing borrowers to make monthly payments without properly crediting the payments, and by profiting off of Bees' overpayments.

120.  The Servicers' actions caused substantial injury to Bees and to consumers generally, as Bees and consumers reasonably expect their contracts to be honored, their loans and accounts to be properly managed, and their payments properly applied.

121.  Bees could not avoid these immoral undertakings because the Servicers would not accurately communicate with his in response to his phone calls, letters, and other objections.

122. When taken as a whole over a year, the Servicers' conduct was so unethical and unending, that Bees had no choice but to submit.

### b. Deception

123. The Servicers' following actions were deceptive: (i) attempting to collect upon and threatening to foreclose upon a debt without verifying the amount owed; (ii) sending disclosures, statements, and notices that included unauthorized or unearned costs and fees; (iii) making material misrepresentations of fact regarding the status of the subject loan, the payment history, and the amounts actually owed; (iv) overcharging Bees' account in late fees and other costs not authorized by the contract or law; (v) providing conflicting disclosures to Bees; (vi) accelerating the debt and threatening foreclosure without responding to Bees' disputes, and (vii) employing communications with Bees that were confusing and specifically designed to deceive Bees so he could not decipher the true statements from the deceptive statements.

124. The Servicers increased Bees' principal balance and altered his loan modification effective date in a deceptive fashion by failing to notify Bees that the changes had been made to his account.

125. The Servicers deceived Bees by advising him to stop making payment in October 2013, for the sole purposes of finding him in default to ultimately foreclose on his home.

### c. Misrepresentation

126. In addition to the above conduct, the Servicers misrepresented the amounts due so Bees could not understand why his payments were insufficient to bring the loan "current."

127. Bees relied on the amounts that the Servicers stated that he owed to his detriment.

128. Bees relied on the terms of the subject loan, by paying the amounts that he owed, only to be tricked into believing he was in "default."

129. The Servicers misrepresented the status of the subject debt and tricked Bees by intentionally keeping the account in a perpetual state of "default."

130. The Servicers made material misrepresentations regarding the amounts due under the loan, amounts due for costs and fees, effective date of the loan modification, and how Bees' payments were applied.

131. Due to the misrepresentations, Bees was unable to determine why his payments were "insufficient" to bring the loan "current" and unable to determine the true amount owed.

132. The Servicers intended Bees to rely on their deceptive and unfair acts and their misrepresentations, and Bees did in fact rely on the Servicers' deceptive and unfair acts to his detriment by paying an inflated and fraudulent amount on the subject loan

133. The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce.

134. Punitive damages are warranted because the Servicers' conduct was outrageous, willful, wanton, showed reckless disregard for the rights of Bees and consumers in general, and carried on for over a year.

WHEREFORE, Plaintiff RICHARD BEES requests that this Honorable Court:

    a.   enter judgment in his favor and against BANA and Bayview;

    b.   declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    c.   award Bees statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;

    d.   order the deletion of all adverse credit reporting related to the loan;

    e.   award Bees costs and reasonable attorney fees under 815 ILCS 505/10a(c); and

    f.   award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATION OF THE TRUTH IN LENDING ACT
### (AGAINST BNYM)

**a. Violation of § 1641(g)**

135.  BYNM failed to send Bees a notice that it was the new creditor for the subject loan within 30 days after the mortgage loan was sold as required by TILA, 15 U.S.C. § 1641(g).

136.  As a result, Bees was unaware of who owned his loan, who to contact regarding his improperly increased principal balance and payment amount, or who could ultimately resolve his never-ending dispute.

**b. Violation of § 1641(f)**

137.  On June 20, 2014, Bees sent a written request to Bayview, BNYM's servicer, pursuant to § 1641(f). The letter requested the full name, address, and telephone number of the current owner and holder of the original mortgage note (under § 1641(f)(2) of TILA).

138.  Bayview never provided Bees with a response to the § 1641(f) written request with the required information, including the identity, address, or the telephone number of the new creditor and master servicer of the obligation, within 30 days.

139.  As its principal, BNYM is liable for the acts of its agent, Bayview.

140.  As a result, Bees was unaware of who owned his loan, who to contact regarding his increased principal balance and payment amount, or who could ultimately resolve his never-ending dispute.

WHEREFORE, Plaintiff RICHARD BEES requests that this Honorable Court:

    a.   grant judgment in his favor and against BNYM;

    b.   declare BNYM's conduct to be a violation of TILA;

    c.   award Bees actual, statutory and additional damages pursuant to TILA § 1640;

    d.   award Bees reasonable attorney fees and costs pursuant to TILA § 1640; and

    e.   award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

By: ____/s/Ross M. Zambon_____
          **Ross M. Zambon**
          Attorney for Plaintiff

Ross M. Zambon
ARDC # 6294149
Mara A. Baltabols
ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523